UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 07-113-DCR |
| | ) | Civil Action No. 6: 11-7193-DCR |
| V. | ) | |
| | ) | |
| WILLIE DEE CRUMPLER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant/Movant Willie Dee Crumpler's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 55] The United States has also moved to dismiss Crumpler's habeas motion. [Record No. 62] Because the Court concludes that Crumpler knowingly and voluntarily waived his right to file a motion seeking collateral relief under § 2255, the Court will grant the government's motion. Crumpler's request for habeas relief will be denied.

**I.**

Crumpler supplied OxyContin pills for distribution in the Eastern District of Kentucky. He was arrested on August 29, 2007, during an undercover operation conducted in London, Kentucky. [Record No. 1] At the time of his arrest, Crumpler was in possession of OxyContin pills which he intended to deliver pursuant to an earlier agreement with a confidential informant ("CI"). According to the Criminal Complaint filed on August 30, 2007, the CI had purchased OxyContin pills from Crumpler on earlier occasions. [Record No. 1]

-1-

A.      **The Competency Hearing**

At the time of his initial appearance before a United States magistrate judge, Crumpler's counsel requested that a competency evaluation be performed. [Record No. 6] The request was granted and a competency hearing was subsequently held on December 10, 2007, before United States Magistrate Judge Robert E. Wier in accordance with 18 U.S.C. §§ 4241 and 4247(d). [Record No. 47] Following this hearing, Magistrate Judge Wier concluded that Crumpler was competent to stand trial.

After addressing the relevant competency principles of *Dusky v. United States*, 362 U.S. 402 (1960), Magistrate Judge Wier addressed the findings of BOP examiner Dr. Betsy Campbell.

> Here, with a stipulation as to admissibility of the report, the only proof as to current competency is the expert analysis of Dr. Campbell. In a thorough and well-documented ten page report, Dr. Campbell analyzes Defendant's history, course of evaluation (which covers over forty days) and testing performance. Dr. Campbell benefitted from (and describes) extended access to and multiple interviews of Defendant. She accounted for his history of mental treatment and multiple interviews of Defendant. She accounted for his history of mental treatment and his history of substance abuse. In the end, based on all of the summarized factors, Dr. Campbell opined, under the appropriate legal standards, that "Mr. Crumpler is currently competent to stand trial." *See* Report at 10.

> Defendant did not criticize or question the factual observations, methodology, or conclusions in Dr. Campbell's Report. Defendant also raised no questions as to Dr. Campbell's qualifications or expertise. Mr. Crumpler did provide a 1995 letter purportedly from his treating psychiatrist. That letter confirms some of the treatment history Mr. Crumpler provided to Dr. Campbell. The Court notes that Dr. Campbell fully considered the prior treatment history, specifically including the 1995 letter, and the Court does not view the 1995 letter as conflicting with or affecting the basis for or validity of Dr. Campbell's ultimate decision.

> Further, the Court has not independently observed behavior that conflicts with Dr. Campbell's conclusions. In Court appearances, Defendant appeared under control and conscious of events. He has responded appropriately to questions and has offered information or otherwise engaged properly in dialog with the Court and

with counsel.  The Court has seen no irrational or erratic conduct that would indicate a current competency deficit.

The Court finds no evidence to support that Defendant is not competent, and certainly finds nothing that would establish incompetency by a preponderance of the evidence.  Indeed, the Court finds that Defendant is able to understand the nature and consequences of the proceedings and can assist in his defense. Defendant is competent to face further proceedings, to include trial, in this matter.[1]

[Record No. 17, pp. 2-3 (footnotes omitted)]

### B.       The Indictment and Written Plea Agreement

On December 19, 2007, Crumpler was charged with knowingly and intentionally distributing, and possessing with intent to distribute OxyContin, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1).  Count 1 of the indictment concerned Crumpler's activities on August 1, 2007, while Court 2 pertained to his intended distribution on August 29, 2007.  [Record No. 19]  Crumpler faced up to twenty years imprisonment under each count.

Rather than proceed to trial, Crumpler entered a guilty plea to both counts on February 25, 2008.  The written Plea Agreement tendered to the Court at the time of the re-arraignment hearing outlined the elements of conviction for each count as well as a factual basis for the defendant's guilty plea.  In relevant part, Crumpler admitted to the following facts which are outlined in his Plea Agreement:

(a)       On July 5, 2007, a confidential source (CS) was arrested by the Laurel County Sheriff's Office (LCSO) in possession of 68 Oxycontin (OC) tablets, a Schedule II controlled substance.  The CS agreed to cooperate with law enforcement in the investigation of his source of supply (SOS)

---

1        Consistent with Dr. Campbell's recommendation, Magistrate Judge Wier noted that the Court should be cognizant regarding the pace of the proceedings and the defendant's visual and hearing needs.  [Record No. 17, p. 3 n.1]

-3-

from Detroit, Michigan. The CS identified the Defendant, Willie Crumpler, as his SOS. The CS stated that he had reached an agreement with the Defendant in 2006 where the Defendant would sell the CS a quantity of OCs that would be resold in the Eastern District of Kentucky (EDKY). The CS stated that he had purchased OCs from the Defendant on one occasion. After the first occasion, the Defendant would come to London, Kentucky, in the EDKY and deliver the OCs. The CS stated that he purchased at approximately 200 OCs from the Defendant once a month until his arrest on July 5, 2007.

(b)     Subsequent to his arrest, the CS made several phone calls to the Defendant in Detroit. Several conversations took place between the CS and the Defendant regarding the delivery of OC tablets. On August 1, 2007, the Defendant brought 185 OC - 80 mg tablets and 51 OC - 40 mg tablets to the CS and an undercover DEA agent at the Ramada Inn in London, Kentucky, in the EDKY. The Defendant was paid $6,620 in U.S. currency for the OCs.

(c)     On August 28, 2007, the CS contacted the Defendant by phone to arrange another delivery. On August 29, 2007, the CS and the undercover DEA agent met the Defendant at the same Ramada Inn. Crumpler was arrested and found to be in possession of 174 OC - 80 mg tablets and 110 OC 40 mg tablets. The Defendant was advised of his rights and admitted that he had sold the CS 90 OC - 80 mg tablets in Detroit on one occasion. The Defendant admitted to delivering OCs to London, Kentucky eight times. The Defendant advised that he usually delivered no less that 180 OC 80 mg tablets each time.

[Record No. 31; Plea Agreement, ¶ 4] Based on these admissions, the parties calculated the total amount of OxyContin tablets distributed by Crumpler as having a marijuana equivalency of 771.8 kilograms, resulting in a base offense level of 30 for purposes of calculating his guideline range. [*Id.*, ¶ 5]

In paragraph 8 of his Plea Agreement, Crumpler waived the right to appeal and the right to collaterally attack his guilty plea, conviction, and sentence. [*Id.*, ¶ 8] Further, in paragraph 9, Crumpler agreed to cooperate against others in an attempt to obtain a motion from the

government for a departure from his applicable guideline range in accordance with Section 5K1.1 of the United States Sentencing Guidelines ("USSG").  [*Id.*, ¶ 9]  Crumpler reviewed the Plea Agreement with his attorney and signed the document five days prior to the re-arraignment hearing.

### C.    The Defendant's Admissions and Representations During the Re-Arraignment Hearing

As noted previously, a hearing on Crumpler's motion for re-arraignment was held on February 25, 2008.  [Record Nos. 30, 45]  At the outset of this hearing, the Court explained the purpose of the proceeding and the nature of questions which would be asked.  Crumpler was then questioned by the Court to confirm that he was competent to plead guilty to the charges contained in the indictment.  [Record No. 45, pp. 3-11]

During this questioning, Crumpler stated that he had been treated by a medical doctor as well as a psychiatrist for approximately 15 to 20 years.  He also identified a number of medications prescribed and taken and explained certain diagnoses he had received (*i.e.*, bipolar disorder, paranoid schizophrenia).  Crumpler's attorney then confirmed that, while it had been difficult to communicate with the defendant, he believed that Crumpler understood the nature of the charges against him and that he was not impaired to the point that he could not enter a guilty plea.  [*Id.*, p. 11]

Next, the Court confirmed that the defendant had received and reviewed the indictment with his attorney.  During this part of the hearing, Crumpler stated under oath that he understood the charges against him and that he was satisfied with the advice and representation provided by

his attorney.  [*Id.*, p. 12]² After the central parts of the Plea Agreement were reviewed by the Assistant United States Attorney, Crumpler stated that the summary was accurate and that he understood all relevant terms and conditions.  Additionally, Crumpler confirmed that: (i) there were no undisclosed side agreements or promises; (ii) no threats had been made to induce his entry into the agreement with the government; and (iii) he had not been advised that he would receive a specific sentence in exchange for entering a plea of guilty in the case.  [*Id.*, pp. 16-17]

Following review of the statutory penalties and explanation of the factors that would be considered in imposing the sentence in the case, the Court questioned Crumpler to confirm that he understood the full import of the waiver provision contained in his Plea Agreement.

> THE COURT: Now, there's some waiver language in your plea agreement.  It's not unusual to have this language in a plea agreement, but anytime it's present, of course, I need to review it.  And in your case, the waiver language is contained in paragraphs 7 and 8.  Let me go through this with you.
>
> In paragraph 7, you agree that you would not file a motion for a decrease in the offense level based on what's called a mitigating role or a departure motion under the Sentencing Guidelines, Chapter 5, Parts H or K.  And then in paragraph 8, you waive the right to appeal and the right to attack collaterally the guilty plea, the conviction, and the sentence, including any order of restitution.
>
> And let me confirm that you do understand that you're waiving or giving up those rights; is that correct?
>
> THE DEFENDANT: Yeah.

[*Id.*, pp. 22-23]

---

2       Shortly after Crumpler's re-arraignment, his original attorney, Fred White, was appointed as a district court judge in the Commonwealth of Kentucky.  As a result, attorney White was required to withdraw from further representation of the defendant.  On March 10, 2012, new counsel was appointed to represent Crumpler in all further proceedings.  [*See* Record Nos. 33, 34]  The defendant's sentencing hearing was held on May 29, 2008.  [Record No. 37]

After the charges were read, Crumpler gave the following explanation regarding his guilt while also confirming the accuracy of the factual summary contained in the Plea Agreement as well as his understanding of all questions posed to him during the hearing:

> THE COURT: Can you tell me what it was that you did to be guilty of those two counts? Can you just tell me in your own words what it was that you did?
>
> THE DEFENDANT: I brought the Oxycodone down to sell.
>
> THE COURT: All right. Now, Count One alleges that you distributed, that you knowingly and intentionally distributed, Oxycodone on August 1st of 2007 in Laurel County.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is that accurate?
>
> THE DEFENDANT: Right.
>
> THE COURT: And you do understand that Laurel County is in the Eastern District of Kentucky?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you know at the time that what you had did contain Oxycodone?
>
> THE DEFENDANT: I knew I had OxyContin.
>
> THE COURT: You know that OxyContin has as one of its elements Oxycodone, which is a Schedule II controlled substance?
>
> THE DEFENDANT: I knew it was a Schedule II, but I didn't know it carried the penalties that it carried. I didn't never know that.
>
> THE COURT: You knew it was a Schedule II controlled substance, but you didn't know it had the penalties that it had?
>
> THE DEFENDANT: Right.

-7-

THE COURT: All right.  Now, did you also have in your possession, with the intention to distribute, OxyContin, which is, again, a Schedule II controlled substance, on August 29th –

THE DEFENDANT: Yeah.

THE COURT:  – 2007?  And was that in Laurel County also?

THE DEFENDANT: Right.

THE COURT: There's a factual statement that's contained in your plea agreement.  I know you've had a chance to review this with your attorney, but let me ask you if the facts that are outlined in paragraph 4 of your plea agreement are true and correct to the best of your knowledge and belief?

THE DEFENDANT: Yes.

THE COURT: All right.  And you've had a chance to go through that with your attorney?

THE DEFENDANT: Right.

THE COURT: Mr. Crumpler, is it your intention to enter a plea of guilty to Counts One and Two because you are, in fact, guilty, of those two charges?

THE DEFENDANT: Yes.

*** *** ***

THE COURT: Finally, I have asked you several questions here this afternoon.  I believe that you understood my questions based on your responses, but I want to confirm that that's true.  Did you understand all the questions I've asked you?

THE DEFENDANT: Yes, sir.

[*Id.*, pp. 27-31]

###     D.     The Sentencing Hearing

Crumpler's sentencing hearing was held on May 29, 2008.  [Record Nos. 37, 46]  At the

outset of this hearing, the defendant confirmed that he had received the Presentence Report

-8-

("PSR") and that he had reviewed the document with his new attorney.  [Record No. 46, p. 2]
Because there were no objections to the factual information or the guideline calculations
contained in the PSR, the report was adopted by the Court in its entirety.  [*Id.*, p. 3]  Based on
the quantity of drugs attributed to Crumpler and his criminal history score,[3] the defendant's
guideline range was determined to be 100 to 125 months' imprisonment.  [*Id.*, p. 4]

　　　　The defendant did not provide cooperation to the government.  Thus, no motion was filed
under Section 5K1.1 of the sentencing guidelines.  However, his attorney did ask the Court to
consider a departure based on Crumpler's physical and mental problems.  [*Id.*, p. 8]
Additionally, counsel requested that the Court recommend mental health treatment during the
defendant's period of incarceration at the location closest his home.  The defendant addressed
the Court during allocution and expressed remorse for his actions.  In response, the government
urged the Court to impose a sentence with Crumpler's guideline range, noting the significant
drug problem in Eastern Kentucky related, in part, to supply sources from urban areas such as
Detroit.

_____

3　　　Based on information contained in an addendum to the PSR, Crumpler was placed in Criminal
History category IV, as opposed to category II.  Because the defendant's attorney had not reviewed this
information with him, Crumpler and his counsel were given additional time review the information during
the sentencing hearing.  [*See* Record No. 46, pp. 5-8.] The Court explained,

> [w]hat we'll do, Mr. Payne, I'm going to have a brief recess.  We'll have about a ten-minute
> recess to allow you to examine this.  And if you wish, I will reschedule the sentencing
> hearing in this matter.  I can either schedule it for tomorrow or for Thursday of next week.
> Those are the two dates that would be available for further hearing if we need to do so.  But
> it is, of course, incumbent upon me to make sure that you've fully discussed the information
> contained in the presentence report with Mr. Crumpler.  So if you would – after we take a
> brief recess, if you want to continue the hearing to one of those two times, you can advise
> me at that time, and we can certainly reschedule the matter if it becomes necessary.

[*Id.*, p. 7]  Following a recess, counsel indicated that the defendant wished to proceed rather than delay or
reschedule the sentencing hearing.  [*Id.*, p. 8]

After hearing arguments and statements of the parties, the Court denied Crumpler's oral motion for a departure from his guideline range under USSG Sections 5H1.3 and 5H1.4. The Court explained that,

> [c]onsidering those guideline sections, and while the Court is aware that under some circumstances both mental and physical condition may be a reason for a departure from a particular guideline range, in this particular case, the Court does not find that the defendant has the type of mental, emotional, or physical conditions that would be appropriate for a departure under the guidelines. Although those conditions may certainly be relevant in determining other conditions, such as conditions of supervision or whether additional treatment — supervised release or whether additional treatment is needed during the period of incarceration.
>
> This defendant, while he has some health conditions, they're not health conditions that are out of the ordinary for what the Court sees, and while the Court is also aware of the mental evaluation that was performed and the results of that evaluation, again, those results are not unusual in terms of defendants that appear before this Court.
>
> As counsel for the United States indicates, the Court has seen a number of these cases, and in this particular case, of course, the defendant was responsible for transporting a large number of pills from the Detroit, Michigan, area to this part of Eastern Kentucky, and, of course, that does take some skill to be able to commute that distance and be able to conduct the transactions that were involved in this particular case.

[*Id.*, pp. 10-11]

While the Court did not grant a departure or a variance from the defendant's guideline range, it did consider information regarding the defendant's age, physical condition, and mental capacity in determining the ultimate sentence imposed. This included a recommendation to the Bureau of Prisons that Crumpler receive medical and mental health treatment as well as treatment for drug addiction during the period of incarceration. [*Id.*, pp. 11-13 ] Considering all relevant factors of 18 U.S.C. § 3553 — including the seriousness of Crumpler's criminal

-10-

history — the Court imposed a term of incarceration of 120 months, to be followed by a term of supervised release of three years.  [*Id.*, p. 14]

### E.     Crumpler's Direct Appeal

Notwithstanding the waiver provision contained in his Plea Agreement, following entry of the Judgment and Commitment Order, Crumpler filed a Notice of Appeal with the United States Court of Appeals for the Sixth Circuit.  [Record No. 41]  On appeal, Crumpler sought to challenge the validity of the waiver provision, claiming that this Court violated Rule 11 of the Federal Rules of Criminal Procedure by failing to ensure that the defendant understood the waiver.  In other words, Crumpler's direct appeal centered on his argument that his guilty plea was not knowing and voluntary.  However, on August 30, 2008, his appeal was dismissed. [Record No. 50]

After noting Crumpler's mental deficiencies and the accommodations recommended by Dr. Campbell, the Sixth Circuit then reviewed the procedural history of the case.  Citing *United States v. Calderon*, 388 F.3d 197 (6th Cir. 2004), and other relevant authorities, it concluded that the waiver provision was valid and should be upheld.

> This Court reviews de novo the question of whether a defendant validly waived his right to appeal his sentence.  *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) (citing *United States v. Stubbs*, 279 F.3d 402, 411 (6th Cir. 2002)).  It is well settled that a defendant may waive his right to appeal his sentence in a valid plea agreement; however, for a plea agreement to be constitutionally valid, the defendant must have entered into it knowingly and voluntarily.  *Id.* at 483 (citing *United States v. Fleming*, 239 F.3d 761, 76-64 (6th Cir. 2001); *Stubbs*, 279 F3d at 410).  "'When a defendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances.'"  *Id.* at 483 (citing *Stubbs*, 279 F.3d at 410).

Where a "defendant testifies at his plea hearing that he had reviewed the plea agreement with counsel, that he understood all of the agreement's provisions, and that his guilty plea was not coerced," and "there [was] nothing in the record to suggest that [the] defendant entered his plea agreement — and accepted the waiver of appellate rights contained therein — knowingly and voluntarily." *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004) (citing *Fleming*, 239 F.3d at 764).

Here, it is undisputed that Appellant testified at his plea hearing that he had reviewed the plea agreement with his counsel; that he understood the terms of the agreement, including the waiver provisions; and that his plea was not coerced. (R. 45 at 13, 16.)  As in *Calderon*, nothing in the record suggests that Appellant actually did not understand the scope of his waiver of appellate rights.  Even now, Appellant does not allege in his brief that he misunderstood the terms of the plea agreement — he merely alleges that the district court did not sufficiently ensure that he understood the terms.

The record suggests that Appellant likely experienced greater-than-average difficulty in understanding the terms of the plea agreement.  He was found to be competent, however, and the plea hearing transcript demonstrates that both his counsel and the court followed the Report's recommendations to take extra time to ensure that Appellant understood the agreement.  Specifically, the district court gave Appellant ample opportunity to express any lack of understanding, asking Appellant numerous times whether he understood the proceedings and instructing Appellant to point out any areas of confusion.  The court specifically explained the waiver provision at length, and Appellant acknowledged that he understood the terms of that provision.  Finally, Appellant's counsel confirmed at the hearing that Appellant understood the agreement and was able to participate in the proceedings.  For these reasons, we find that Appellant validly waived his right to appeal.

[Record No. 50, pp. 9-11 (footnotes omitted)]

The mandate regarding Crumpler's direct appeal was issued on September 22, 2010.

[Record No. 51]  Crumpler then petitioned the United States Supreme Court for issuance of a

writ of certiorari.  However, that petition was denied on January 10, 2011.  [Record No. 52]

-12-

Crumpler's § 2255 motion was filed within one year of the denial of his petition for a writ of certiorari. [Record No. 55] Thus, it appears to have been timely filed.[4]

## II.

To prevail on a § 2255 motion, a defendant must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003). However, before addressing the merits of Crumpler's claims, the Court must first consider the issue of waiver of his right to collaterally attack the guilty plea, conviction and sentence imposed in the case.[5] That is because a defendant may knowingly and voluntarily waive his right to pursue collateral relief in a plea agreement. If valid, the waiver extends to claims of ineffective assistance of counsel such as those that the defendant seeks to assert in this proceeding. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001).

Both this Court and the United States Court of Appeals for the Sixth Circuit have found that the defendant's guilty plea was knowing and voluntary and that he fully understood all terms

---

4       Crumpler states in his § 2255 motion that he did not file a petition for certiorari with the United States Supreme Court. [Record No. 55, p. 2] As a result, he assumes that his motion is not timely filed and argues for equitable tolling. The record is not clear regarding the circumstances surrounding his certiorari petition. However, it is clear that a petition filed by Crumpler or on his behalf was denied January 10, 2011. [Record No. 52] Additionally, the United States has not argued in its motion to dismiss that his § 2255 motion was untimely. Thus, the Court does not find it necessary to address the timeliness of Crumpler's present motion.

5       Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). Constitutional rights may be waived as long as the defendant does so knowingly and voluntarily. *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995).

and conditions of the written Plea Agreement, including the effect of the waiver of right to directly or collaterally attack the guilty plea, conviction, and sentence. [Record No. 62] Thus, citing *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005), *Calderon*, 388 F.3d at 199, *Fleming*, 239 F.3d at 762-64, and *Davila*, 258 F.3d at 452-53, the government urges the Court to apply well-established rules and dismiss the habeas motion.

The United States's arguments are factually and legally correct. The language of Crumpler's Plea Agreement contains a clear and unambiguous waiver of the right to collaterally attack the defendant's guilty plea, conviction, or sentence imposed. The sentence imposed was within the range authorized by the relevant statutory provision for the offenses. The potential penalties were clearly explained to Crumpler before his guilty plea was accepted. And of equal importance, Crumpler was advised — and he clearly understood — that neither the Court nor his counsel could accurately predict the guideline range which would be applicable in his case until the presentence investigation report was completed and all objections resolved. Further, Crumpler was advised and understood that the parties recommendations regarding guideline calculations would not be binding on the Court. He also acknowledged that the written Plea Agreement contained all of the terms of the parties' agreement. There were no undisclosed terms and Crumpler stated under oath that his guilty plea was not the result of threats or force of any kind.

It is noteworthy that both this Court and the Sixth Circuit have concluded, based on the psychological evaluation performed and other information presented, that Crumpler was competent. The same waiver provision that governs Crumpler's surrender of his right to file a

direct appeal also controls his right to collaterally challenge his guilty plea, conviction, and sentence under 28 U.S.C. § 2255.  At all times relevant to this proceeding, Crumpler's actions were knowing and voluntary.

Additionally, absent highly exceptional circumstances (such as an intervening change in the law), a § 2255 motion may not be employed to re-litigate an issue that has already been raised and considered on direct appeal.  *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999).  Here, the issue of Crumpler's competency was raised before the Sixth Circuit in the defendant's direct appeal.  Having been decided adversely to him, Crumpler may not attempt to re-litigate that issue in connection with another part of paragraph 8 of his Plea Agreement.

### III.

Even if Crumpler had not waived his right to file a motion seeking collateral relief under 28 U.S.C. § 2255, his claims would fail on the merits.  Crumpler does not seek to have his conviction or guilty plea set aside on the grounds that he is not guilty of the offenses charged.[6] Instead, he asks to be re-sentenced "according to the promise made to obtain a guilty plea." [Record No. 55, p. 13]  That is, he seeks to be sentenced to a term of imprisonment of 51 to 61 months.  However, his argument centers on his claim that he was not competent to enter a guilty plea because of his age, physical condition, and certain mental deficiencies identified in a letter

---

6    The nature of the relief requested by the defendant undercuts the high standard for obtaining collateral relief which Crumpler acknowledges in the portion of his motion captioned "Supplemental Memorandum of Law."  [*See* Record No. 55-3, pp. 1-7]  Crumpler does not assert that he is actually innocent of the criminal conduct charged or that he would not have entered a guilty plea if he were aware that his guideline range was something other than 51 to 61 months.

from Dr. Alejandro Zapata.  [Record No. 55-1, p. 1]  He contends that this information was not

considered by the Court in determining his competency and that a second evaluation might have

yielded different results.  But the record reflects that Dr. Zapata's letter *was* considered by the

magistrate judge in making the initial determination regarding competency.[7]  This information

was also considered, together with statements given by Crumpler under oath, in connection with

the undersigned's determination of competency at the time the defendant entered his guilty plea.

The magistrate judge as well as the undersigned fully considered the evidence regarding

Crumpler's age, physical condition, and mental deficiencies in concluding that he was competent

to proceed.  Crumpler has offered nothing to contradict this conclusion.

An accused is competent to enter a guilty plea if he has both the "sufficient present ability

to consult with his lawyer with a reasonable degree of rational understanding" and a "rational

as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362

U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted); *see United States v. Ford*,

---

7       The letter indicates that

> Mr. Willie Crumpler is currently under my professional care for the treatment of his
> Schizoaffective Disorder, bipolar type.  His symptoms are mood swings, depression,
> problems with concentration and bad memory and hearing voices.  His currently [sic]
> medications are Wellbutin XL150mg, one table [sic] in the morning; Seroquel 200 mg, one
> tablet at bedtime Xanax 2mg, one tablet three times daily as needed.

[Record No. 15; Exhibit 1 from competency hearing held December 10, 2007]

The deficiencies outlined in Dr. Zapata's letter are discussed in Dr. Campbell's Forensic Report dated
November 28, 2007. [Record No.14] Nothing in Dr. Zapata's letter conflicts with the conclusions reached
by Dr. Campbell.  These sealed materials were available to the defendant's trial and appellate counsel.
[Record Nos. 48, 49]

184 F.3d 566, 580 (6th Cir. 1999).  Competency was established according to this standard and Crumpler has not produced evidence to the contrary.

Crumpler's assertions that: (i) he was forced and intimidated to enter a plea of guilty, based on a claim that his wife might be indicted if he refused; and (ii) his attorney promised that he would only receive a sentence of between 51 and 61 months are contrary to his sworn statements made during the defendant's plea hearing.  As the Supreme Court has recognized, a defendant's solemn declaration made during such a hearing carries a presumption of truthfulness. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Thus, even if he had not waived the right to challenge his guilty plea, conviction and sentence, Crumpler's substantive claims of threats and false promises would fail as being completely contrary to his sworn statements.

As the United States Court of Appeals for the Fourth Circuit has explained,

> an appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea.  To view the Rule 11 plea colloquy as a procedural game in which pieces are moved and manipulated to achieve a result that can beat the system established for providing due process to the defendant undermines that very process.

*United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) (internal citations omitted); *see also Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (observing, as to "fully adequate" Rule 11 procedures, that "[t]o allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards").  In this case, Crumpler represented to the Court during the re-arraignment hearing that he had not been told he would receive any particular sentence in exchange for his guilty plea.  He fully understood that the sentencing guideline range could not

-17-

be correctly calculated at that time and that the final decision regarding the sentence to be imposed was outside the parties' control.  His  statements that no threats has been made to obtain his guilty plea were equally clear and unequivocal.

Finally, even if Crumpler's original attorney had incorrectly predicted the defendant's guideline range at the time he entered his guilty plea, the defendant would not be entitled to relief in this proceeding.  It is well-settled that "a defense attorney's erroneous calculations and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea."  *United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993); *see United States v. Stephens*, 906 F.2d 251, 253-54 (6th Cir. 1990); *see also Gonzalez v. United States*, 33 F.3d 1047, 1051-52 (9th Cir. 1994) ("The district court informed [the defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty.  He responded affirmatively when asked if he was satisfied with [counsel's] representation of him.  As a result, [he] cannot claim he was prejudiced by [counsel's] alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) ("[Defendant's] attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel.  Further [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court." (internal citation omitted)).

## IV.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

    1.    Defendant/Movant Willie Dee Crumpler's motion to vacate, set aside, or correct

his sentence [Record No. 55] is **DENIED**.

    2.    The United States's motion to dismiss [Record No. 62] is **GRANTED**.

    3.    The defendant/movant's habeas proceeding [Civil Action No. 6: 11-7193-DCR]

is **DISMISSED** and **STRICKEN** from the Court's docket.

    4.    A final and appealable judgment will be entered this date.

This 28th day of September, 2012.



Signed By:
*Danny C. Reeves* DCR
United States District Judge